IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

A.S., BY HER NEXT FRIEND
AND MOTHER, JANIELE REID,
and, JANIELE REID, individually,

    PLAINTIFFS,

                                                        Case No:2:19-cv-02056-JTF-cgc

v.                                               JURY DEMANDED

SHELBY COUNTY BOARD OF EDUCATION,
and, GREG MCCULLOUGH,
in his individual and official capacities,

    DEFENDANTS.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

COMES NOW Plaintiffs A.S. and Janiele Reid ("Plaintiffs"), by and through undersigned counsel, and in response in opposition to the Defendants' motion to dismiss would states as follows:

### I. INTRODUCTION

Defendants' Motion to Dismiss appears to address an entirely different lawsuit than that brought by Plaintiffs. As a preliminary matter, Defendants state that "Plaintiffs assert claims under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*, (hereinafter "IDEA"). . . ." Defendants also request a stay of all other claims arising from other anti-discrimination statutes, citing no legal basis for this request.

First, Defendants' characterization of Plaintiffs' complaint is inaccurate. Plaintiffs, though referencing IDEA, do not seek relief under IDEA in any count of their Complaint.

1

Further, all of the claims for which Plaintiffs do seek relief are outside the scope of IDEA and properly pled under other federal statutes. Finally, Plaintiff Reid is a parent, not a student. The very idea that her claims can be subject to IDEA is facially absurd, as Plaintiff Reid is not within the class of persons protected under IDEA. Defendants draw no distinction between Plaintiffs and, instead, seek dismissal of the entire complaint while making no argument with regard to Plaintiff Reid's claims.

Plaintiff A.S. specifically notes that Paragraph 8 of her Complaint states that her IDEA claims are at the administrative stage. Dkt. 1 at pp. 2-3. These claims may or may not ever come to fruition. Just last year the United States Supreme Court, in *Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743 (2017), held that claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act (the "other anti-discrimination statutes" glossed over by Defendants) are distinguishable from claims the gravamen of which sounds in the ADA and Rehabilitation Act. It is this category of claims that Defendant pursues.

## II. STANDARD OF REVIEW

The standard for analysis of an F.R.C.P. 12(b)(6) motion is set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). An examination of the *Twombly* opinion is essential to a correct ruling on the pending motion. The *Twombly* opinion recites a set of rules to be applied when considering a motion to dismiss:

1. Factual allegations must be enough to raise a right to relief above the speculative level; and

2. The pleading must contain something more than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Following *Twombly*, the Supreme Court issued its opinion in *Ashcroft v. Iqbal*, 556 U.S. 662, in 2009. Relying on *Twombly* the opinion holds that "[t]he pleading standard Rule 8 announces does not require "detailed factual allegations" but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal* requires a plaintiff only to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant acted unlawfully.

As Defendants point out, the failure to exhaust administrative remedies is not a jurisdictional bar, but rather a condition precedent to an action in federal court. *Himes v. U.S.*, 2009 U.S. Dist. LEXIS 78586, and, accordingly, to the extent that this Court determines that Plaintiff A.S.' claims sound in IDEA, this Court should simply stay those claims pending administrative exhaustion. That being said, none of Plaintiff A.S.' claims sound in IDEA.

### III. APPLICABLE LAW

A.  The *Fry* Test

The IDEA requires that a plaintiff exhaust the Act's administrative procedures when the lawsuit seeks relief for the denial of a Free Appropriate Public Education ("FAPE"). *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752 (2017). "For that reason, § 1415(l)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a FAPE." *Fry*, 137 S.Ct. at 754. *Fry* stands for the proposition that Courts should draw a distinction between claims that relate to a FAPE and claims that do not relate to a FAPE. *Id*. The statutory language of IDEA requires Courts to determine whether a complaint "seeks" relief available under the IDEA. This inquiry is

3

not "whether the suit 'could have sought' relief available under the IDEA (or, what is much the same, whether any remedies 'are' available under that law)." The Plaintiff chooses their remedial basis—and is subject to exhaustion or not based on that choice. A court deciding whether §1415(*l*) applies must therefore examine whether a plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education. *Fry*, 137 S. Ct. at 755 (2017). This is a substantive examination. *Id.* In determining whether a claim falls within IDEA a Court should "attend to the diverse means and ends of the statutes covering persons with disabilities-the IDEA on the one hand, the ADA and Rehabilitation Act (most notably) on the other." *Id.*

IDEA protects <u>only children</u>, and has no bearing on claims by adults *Id.* It concerns <u>only their schooling</u> and seeks to provide individualized services unique to their needs *Id.* By contrast, the ADA and Rehabilitation Act protect people with disabilities of all ages, inside and outside of schools. *Id.* at 756. These statutes relate to reasonable accommodations, equal participation, and access to public facilities and federally funded programs. *Id*. In sum, IDEA guarantees <u>individually tailored educational services</u>, and Title II and §504 guarantee non-discrimination in access to public institutions. *Id.*  While there can be overlap, a complaint brought under Title II and §504 might seek relief for simple discrimination, having nothing to do with IDEA's FAPE obligation. *Id.*

In order to ascertain whether a claim sounds in IDEA or Title II and §504, the Supreme Court, in *Fry*, set forth a pair of questions that courts should ask:

1) **"[C]ould the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?"** ***Id*.**

2) **"[C]ould an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?"** ***Id.***

"When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward." The Supreme Court went on to give some specific examples. *Id*. A wheelchair-bound child, for example (particularly relevant to the case at bar), is not restricted to suit under IDEA due to a lack of wheelchair access.[1] *Id.* By way of example of a claim that falls under IDEA, the Court provides the example of remedial tutoring, a related service to the student's education. *Id*. Of particular relevance to this case, the Court repeatedly asks whether the same claim could be made against or the same discrimination occur in a public theater or library. *Id*.

B.  **The Futility Exception**

"[W]here there is no administrative remedy for a wrong that the plaintiff has suffered, exhaustion is futile and may be waived." *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000). When a child or parent of a child has alleged retaliation for seeking medical accommodations, exhaustion is not required because the complaint centers around retaliation for advocating for children, not an educational placement. *See C.G. v. Cheatham Cty. Bed. Of Educ.*, 2015 U.S. Dist. LEXIS 77134 at *1-2 (M.D. Tenn. 2015). When a parent alleges a school district has retaliated for reporting non-educational ADA claims by physically and emotionally abusing a special education child, exhaustion is not required. *Hicks v Benton Cnty. Bd. Of Educ.*, 222 F. Supp. 3d 613, 634 (W.D. Tenn. 2016) (citing *M.A. v. N.Y. Dep't. of Educ.*, 1 F. Supp. 3d 125, 144-46 (S.D.N.Y. 2014)). Where a child seeks to be made whole for past injuries, and money damages are the only available remedy, exhaustion is futile and not required before the plaintiff

---

[1] Plaintiff makes this specific claim at multiple points in her Complaint. How Defendants can, with a straight face, attempt to argue that wheelchair accessibility is either forced into IDEA's framework or not covered under the ADA and Rehabilitation Act is beyond Plaintiffs.

5

can file suit in federal court. *Covington*, 205 F.3d at 917. In other words, Plaintiffs need not engage in a *pro forma* process of exhaustion where an IDEA hearing officer cannot proactively resolve an ongoing problem, or, put simply, what is past is past, and this Court has the authority to remedy it.

### C. Standard for Retaliation

Some of Plaintiffs' retaliation claims are patently obvious. For example, where Plaintiff Reid complained to the school nurse about medical procedures and that nurse, on information and belief, contacted DCS to report Plaintiff Reid for illegally giving her child drugs when the drugs in question were Plaintiff A.S.'s seizure medication, any reasonable jury can and would infer that such an action was retaliatory in nature. Other claims are based on the well-settled principle that temporal proximity between protected activity and adverse action creates a *prima facie* case of retaliation. The Sixth Circuit has "embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse . . . action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Porter*, 358 F.3d 408, 421 (6th Cir. 2004). "Temporal proximity can often help meet this causal burden, and where the adverse action comes 'very close in time' after the exercise of protected activity, "such temporal proximity . . . is significant enough" to meet the burden alone, A.C. v. Shelby Cty. Bd. of Educ., 711 F.3d 687, 699 (6th Cir. 2013).

### IV. APPLICATION TO PLAINTIFFS' CLAIMS

Defendants have attempted to re-plead the allegations in Plaintiff's Amended Complaint in their entirety, omitting critical, relevant facts from their Memorandum, including some

blatantly inaccurate statements, and ignoring a significant majority of the factual allegations and legal claims that Plaintiff has asserted against them. This is inappropriate given that an initial premise of an F.R.C.P. 12(b)(6) motion is that the Court must accept as true <u>all</u> factual allegations. *Iqbal*, 556 U.S. 662 at 678. Specifically, Defendants, in an effort to evade responsibility for non-IDEA claims, intentionally conflate clear IDEA violations that are included to the Complaint for context with ADA and Rehabilitation Act violations that form the basis for Plaintiffs' claims for relief. To clarify the issues before this Court, Plaintiffs' provides a listing of those specific instances of discrimination and retaliation for which they claim a right to relief under Title II and §504:

1. Making false reports to DCS for alleged child abuse in retaliation for Plaintiff Reid engaging in protected activity by insisting on proper medical treatment for her daughter; (Dkt. 1, ¶ 23);
2. Defendants <u>induced Plaintiff A.S. to have multiple seizures</u> by failing to provide her already-approved read-aloud and no-screen accommodations; (Dkt. 1, ¶¶ 20-22, 41, 50-51);
3. Failing or refusing to provide necessary physical accommodations including access between floors, unlocked wheelchair accessible doors, an evacuation plan during fire alarms, and leaving her trapped on the second floor during fire alarms; (Dkt., ¶¶ 25-27, 30-33, 39-40, 49, 58).
4. Failing or refusing to provide reasonable medical accommodations including providing necessary medical procedures to simply allow Plaintiff A.S. to be physically present school, to heat to rooms where medical procedures are to be performed during freezing temperatures, and securing A.S.' medical supplies and controlled substances to prevent theft; (Dkt. 1, ¶¶ 34-38, 56-57).
5. Retaliating against both Plaintiffs A.S. and Reid for reporting all of the above concerns, including, most egregiously disciplining Plaintiff A.S. for violating the school's cell phone when she called the Memphis Fire Department for help while trapped on the second floor; (Dkt. 1, ¶¶ 39-40).. (Dkt., ¶¶ 21-28, 30-58).

Plaintiffs take each of these in turn:

1. **The Retaliatory DCS Report**

Plaintiffs have alleged that Defendants are responsible for retaliation against them because Plaintiffs sought medical accommodations. (Dkt. 1, ¶ 23.) As a preliminary matter, "[w]hen a child or parent of a child has alleged retaliation for seeking medical accommodations, exhaustion is not required because the complaint centers around retaliation for advocating for children, not an educational placement." *C.G. v. Cheatham Cty. Bed. Of Educ.*, 2015 U.S. Dist. LEXIS 77134 at *1-2 (M.D. Tenn. 2015). One need not apply much analysis to this issue, however, because the Sixth Circuit has already addressed a nearly identical case brought by a similarly-situated student against *this particular defendant* under the ADA. That Defendants did not cite to the case of *A.C. v. Shelby County Bd. of Educ.* should give this Court pause and caution extraordinary care in analyzing any legal assertion made by Defendants, as they clearly fail to cite even the most clear adverse authority.

In *A.C.* the Sixth Circuit reversed a grant of summary judgment by a magistrate judge of this Court where Plaintiff alleged that a school official violated the ADA when he made an intentionally or recklessly false DCS report about a student in retaliation for repeated requests and complaints regarding the school providing a medical procedure. *A.C. v. Shelby Cty. Bd. of Educ.* 711 F.3d 687 (2013). The Sixth Circuit specifically addressed the issue of proving retaliation by temporal proximity. *Id.* at 699. The Sixth Circuit held that "[t]he evidence in this case, including both temporal proximity and evidence calling into question the truthfulness of the reports themselves, is sufficient to meet Plaintiffs' minimal burden to put forth evidence permitting a reasonable inference of causation." *Id*.

Those are precisely, virtually to the letter, the facts that Plaintiffs allege. Plaintiffs repeatedly insisted on a medical accommodation. Plaintiffs complained when the medical

8

accommodation was not properly provided. Plaintiffs had a stormy relationship with the school personnel because of these and other requested accommodations. Plaintiff Reid had a specific confrontation with the school nurse relative to the accommodation. School personnel made a false report to DCS about Plaintiff Reid.[2] It is hard to fathom how Defendants could distinguish between this case and *A.C.*, as they engaged in exactly the same conduct in both cases, so they, or their counsel, chose not to even try to do so.

    2.    **Seizures Caused by Failure to Provide Approved Accommodations**

Defendants discriminated against Plaintiff A.S. in violation of the ADA and Rehabilitation Act when they failed to provide Plaintiff her already-approved read-aloud and no-screen accommodations, causing her to suffer migraines and multiple seizures. (Dkt. 1, ¶¶ 20-22, 41, 50-51). These accommodations were already approved for Plaintiff A.S. (Id.) Plaintiff does not complain that the IEP was incomplete or did not provide for a FAPE. Plaintiff does not complain that her "schooling" was impacted, as *Fry* requires for IDEA to be implicated. 137 S. Ct. at 752. Plaintiff complains that Defendants caused her to suffer from seizures and migraines. (Dkt. 1, ¶¶ 20-22, 41, 50-51.)

As a threshold matter, even if IDEA were somehow implicated, the futility exception would clearly apply because Defendants cannot undo or redress the harm caused by the migraines and seizures suffered by A.S. Where a child seeks to be made whole for past injuries, and money damages are the only available remedy, exhaustion is futile and not required before the plaintiff can file suit in federal court. *Covington*, 205 F.3d at 917. Defendants cannot turn back the clock on Plaintiff's seizures, they can only pay damages for the injury.

---

[2] DCS records are confidential under state law, however <u>only</u> school personnel, Plaintiffs, and Plaintiff A.S.' medical providers knew that Plaintiff Reid gave Plaintiff A.S. diazepam (Valium). The person who made the report did not inform DCS that diazepam was prescribed to A.S. as an anti-seizure medication.

That being said, IDEA is not implicated here under the *Fry* analysis. First, the accommodations themselves are of the type that the *Fry* analysis excludes from IDEA because "the alleged conduct [could have] occurred at a public facility that was *not* a school—say, a public theater or library[.]" *Fry*, 137 S. Ct. at 756. By way of specific example of another public facility where such accommodations are provided, one need look no further than the Library of Congress. The National Library Service for the Blind and Physically Handicapped is a United States government program that provides exactly the same accommodations for persons of all ages with the same types of disabilities from which Plaintiff A.S. suffers. Library of Congress, National Library Service for the Blind and Physically Disabled (2018), https://www.loc.gov/nls/. Likewise, the second portion of the *Fry* test demonstrates that IDEA is not implicated because these are reasonable accommodations that an adult employee of the school suffering Plaintiff A.S.' or other disability, like blindness, could expect in the workplace.[3] *Fry*, 137 S. Ct. at 756.

3.   **Failing to Provide Physical Accommodations for A.S. Mobility Needs**

At Paragraphs 25 through 27 of their Complaint, Plaintiffs allege that Plaintiff Reid attempted to arrange certain transportation accommodations consistent with A.S.' wheelchair access requirements for a field trip. Typically, these accommodations are arranged in advance, and the school provides an appropriately equipped vehicle. When Plaintiff Reid attempted to make said arrangements, no one would communicate with her. The next day, when Plaintiff Reid attempted again to communicate with the school regarding these accommodations, a school employee rudely informed Plaintiff Reid that she should have made the arrangements sooner and that they would not be provided. (Never mind that the school clearly knew that they were sending a wheelchair-bound student on a field trip.) Plaintiff Reid was then informed that she

---

[3] For context, read-aloud accommodations are routinely made using electronic devices, substantially broadening the range of persons who are able to use them for accommodations in educational, work, and leisure environments.

10

would be required to take off of work and transport A.S. herself if she wanted to attend the field trip. Defendant SCS never did provide wheelchair-accessible transportation. (Dkt.1, ¶ 25-27.)[4]

At Paragraph 39, Plaintiffs allege that A.S. was left trapped on the second story of the school during a fire alarm without elevator access, that she was never provided an evacuation plan despite requests, and that no employee came to her aid. (Dkt. 1, ¶ 39.) She was compelled to call the fire department herself. (Id.) Defendant's alleges more failures to provide physical accommodation for Plaintiff's wheelchair access needs at Paragraph 49, where Plaintiff alleges that the second story was effectively off-limits to her for two weeks because elevators were left out of service and she was offered no alternate accommodation. (Id. at ¶ 49.)

Plaintiff further alleges that she could not even access the wheelchair-accessible portions of the first floors of buildings because of consistently locked "external building doors that provided access for handicapped individuals." (Id. at 30.) She describes a "constant barrier to [her] access to Central's buildings" and having made "multiple complaints." (Id. at 31.) Rather than simply instructing that wheelchair accessible doors remain unlocked, Defendant McCullough provided Plaintiff A.S. his cell phone number, however, when called in these situations, he has never answered. (Id. at 32.) Plaintiff A.S. complains that she was left in below-freezing temperatures for over half an hour waiting for someone to come and let her in the building on one of the occasions when Defendant McCullough failed to answer. (Id. at 32.)

Defendants, in an instance of seriously disingenuous pleading, misstate the foregoing in their "Memorandum in Support of Defendants' Motion to Dismiss" as follows:

> In an attempt to illustrate Central's failure to provide equal access, and thus circumvent the exhaustion requirement, Plaintiffs' (sic) state that "a majority" of external building doors "would routinely remain locked" during school hours. . . .

---

[4] Defendants cynically refer to requiring Plaintiff Reid to take off work and transport A.S. herself as a "reasonable accommodation."

(Dkt. 12-1, p. 10.)

How Defense counsel can justify omitting the words "that provided access for handicapped individuals" from their quotation and expect this Court to take as facially and contextually accurate any quotation that they subsequently make from caselaw or pleadings is beyond Plaintiffs' comprehension. Defendants use this utterly deceitful language as support for the argument that "it is still unclear how this would place a handicapped person such a Plaintiff A.S. . . . at a greater disadvantage than a non-handicapped person. . . ." Since Defendants have apparently failed to grasp Plaintiffs' point by inference, Plaintiffs spell it out as follows: If doors that are wheelchair accessible are locked, people in wheelchairs cannot access buildings.

Defendants do not, however, stop at attempting to grossly mislead this Court as to Plaintiffs' allegations, but instead take this absurdity a step further by claiming that the locked wheelchair accessible doors are for the "safety of their students, especially students such as Plaintiff A.S., who may be especially vulnerable." Having travelled this far down the rabbit hole, the argument becomes utterly surreal, as Defendants blame their failure to provide wheelchair access on the failure of A.S.' "assistant, who was undoubtedly provided pursuant to the IEP." (Dkt. 12-1 at 10.) They then, through this solipsistic logic (resembling nothing more than Tweedle Dee and Tweedle Dumb casting aspersions at each other), claim that because the IEP provides for an assistant, and the assistant would be responsible for opening locked doors, and because the locked doors would not have inconvenienced A.S. but for the school-provided assistant's failures that a locked wheelchair accessible door is somehow educational in nature, triggering IDEA's exhaustion requirement. (Id.)

Again, this Carroll-esque reasoning fails to pass the most rudimentary legal analysis. In addressing *exactly* these types of accommodations, the *Fry* Court noted that they are not claims

under IDEA but instead under the ADA and Rehabilitation Act. ("Consider that the child could file the same basic complaint if a municipal library or theater had no ramps. And similarly, an employee or visitor could bring a mostly identical complaint against the school. That the claim can stay the same in those alternative scenarios suggests that its essence is equality of access to public facilities, not adequacy of special education. Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 756 (2017).) That Defendants claim these failures to accommodate are somehow barred by IDEA's exhaustion requirement is so inconsistent with *Fry* as to fail to even meet a good faith standard in the pleadings.[5]

### 4. Failure to Provide Medical Accommodations

At Paragraphs 56 and 57 of her Complaint, Plaintiff A.S. alleges that, despite requests, the school refused to provide catheterization procedures, to turn on the heat to rooms where her catheterization procedures were performed, forcing her to sit half-clothed in the cold to undergo an intrinsically unpleasant medical procedure. The school also failed to secure A.S.' medical supplies and controlled substances, resulting in Plaintiff Reid having to provide far more supplies than A.S. actually used. (Dkt. 1, ¶¶ 34-38, 56-57). By this point, Plaintiffs have repeated the standard under *Fry* so often as to be repetitive. Again, these accommodations could impact an adult in the same environment or an individual in a non-educational environment like a workplace. They have nothing to do with her education as they are fundamentally medical in nature. They cannot be remedied by an ALJ by addressing deficiencies in A.S.' IEP. They involve turning on heat, making sure a nurse is on site, and locking cabinets. Defendants utterly fail to explain how these are "educational in nature" or how the gravamen of these claims sounds

---

[5] Much of Defendants Motion to Dismiss suffers from this issue, but given the fee-shifting provisions of § 1988 it seems unnecessary and time consuming to seek to compel them to withdraw their pleading or to seek sanctions.

in the failure to provide a FAPE. They relate entirely to her ability to be physically present at the physical facility and are, therefore, properly brought under the ADA and Rehabilitation Act.[6]

### 5. Retaliation Claims

Plaintiffs have pled numerous retaliation claims which are, by their nature, not subject to IDEA's exhaustion requirement both under *Fry* and *Covington*. This Court recently, in an opinion by Judge Breen, ruled that retaliation claims for advocating for children with disabilities are not subject to IDEA's exhaustion requirement under *Fry*, but, more fundamentally, because it would be futile for the exhaustion process to try to remedy them because they could not be redressed to any degree by IDEA's administrative procedures and because they are not "initially best addressed by educational professional through the administrative process." Hicks v. Benton Cty. Bd. of Educ., 222 F. Supp. 3d 613, 634 (W.D. Tenn. 2016). All of Plaintiffs' retaliation claims are of the sort addressed in *Hicks* or *A.C.* No redress is possible other than damages, and they are therefore not subject to IDEA's exhaustion requirement.

## V. CONCLUSION

Defendants have bent and twisted the language of Plaintiffs' Complaint and all relevant caselaw beyond recognition. They fail to point to a single claim of Plaintiffs' that can be redressed by resort to IDEA's administrative procedures. Every claim has its gravamen in the ADA or Rehabilitation Act, and even those that are tangentially related to education, like the read-aloud accommodation, are futile to address before an ALJ because Plaintiff does not make claims for prospective or ongoing harms, but for severe medical injuries incurred as a result of

---

[6] Ironically, the only other school district that Plaintiffs have found litigating similar issues post-*Fry* argued that the IDEA ALJ lacked jurisdiction to hear medical accommodations issues because they did not fall under IDEA. See: K.M. v. Tehachapi Unified Sch. Dist., No. 1:17-cv-01431-LJO-JLT, 2018 U.S. Dist. LEXIS 76958, at *5 (E.D. Cal. May 7, 2018).

Defendants' failure to provide the accommodation. Accordingly, this Court should *deny* Defendants' Motion to Dismiss.

       Respectfully submitted

       BLACK MCLAREN JONES RYLAND & GRIFFEE
       A Professional Corporation

       By:    /s/ *Brice M. Timmons*_____
              Brice M. Timmons   #29582
              Jana Davis Lamanna   #23619
              Christopher M. Williams #36256
              530 Oak Court Drive, Suite 360
              Memphis, Tennessee  38117
              (901) 762-0535 – telephone
              (901) 762-0539 – facsimile
              btimmons@blackmclaw.com
              jlamanna@blackmclaw.com
              cwilliams@blackmclaw.com
              *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing electronically filed document was served upon all counsel of record via the Court's CM/ECF filing system on March 8, 2019.

              /s/ *Brice M. Timmons*_____
              Brice M. Timmons