IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| A.S., BY HER NEXT FRIEND AND MOTHER, JANIELE REID, and JANIELE REID, individually<br><br>   Plaintiffs,<br><br>v.<br><br>SHELBY COUNTY BOARD OF EDUCATION, and GREG MCCULLOUGH, in his individual and official capacities,<br><br>   Defendants. | Case No. 2:19-cv-02056-JTF-tmp |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

Before this Court is Defendants Shelby County Board of Education and Greg McCullough's Motion to Dismiss Plaintiffs A.S. and Janiele Reid's Complaint, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim; the Motion was filed on February 13, 2019. (ECF No. 12.) In March 2019, Plaintiffs filed their Response in Opposition to Defendants' Motion to Dismiss and Defendants filed a reply. (ECF No. 14, 15.) For the reasons discussed below, this Court concludes that Defendants' Motion to Dismiss should be GRANTED in part and DENIED in part.

**FACTUAL BACKGROUND**

Plaintiff A.S. is a minor child, currently enrolled in Central High School ("Central"), and is a resident of Shelby County, Tennessee. (ECF No. 1, 1:2.) Plaintiff Janiele Reid is Plaintiff

A.S.'s mother and is a resident of Shelby County, Tennessee. (*Id.* at 2:3.) According to her Complaint, Plaintiff A.S. has cerebral palsy, hydrocephalus, seizure disorder and a neurogenic bladder. (*Id.* at 3:10.) Plaintiff A.S. has been diagnosed with spastic diplegia, focal epilepsy, optical myopia, and is being monitored for nerve atrophy in both of her eyes. (*Id.*) Plaintiff A.S. is confined to a wheelchair and continually requires a catheter, which must be changed every three hours. (*Id.* at 3:11.) Plaintiff A.S. has a history of seizures. (*Id.* at 4:11.) As a result of these conditions, Plaintiff A.S. is physically disabled under the Americans with Disabilities Act of 1990. (*Id.*)

To allow Plaintiff A.S. to receive a Free and Appropriate Public Education ("FAPE"), Plaintiff A.S. receives a yearly Individualized Education Plan ("IEP"). (*Id.* at 4:17.) Plaintiff Reid plays a substantial role in determining the appropriate accommodations to include in Plaintiff A.S.'s annual IEP. (*Id.* at 4-5:17.) During the 2015-2016 school year, Plaintiff A.S. attended Snowden Middle School ("Snowden"). (*Id.* at 5:20.) Her IEP that year provided for "read aloud assistance" for State and District mandated testing. (*Id.*) On October 26, 2015, October 30, 2015, and November 4, 2015, Plaintiff A.S. was given a District Mandated test in which "read aloud assistance" was not provided. (*Id.* at 6:21.) Plaintiffs allege that the prolonged reading required to complete the test, coupled with Plaintiff A.S.'s visual diagnoses, caused Plaintiff A.S. to suffer multiple seizures and to be admitted to the hospital. (*Id.* at 5:20-21.) On November 4, 2015, Plaintiff Reid made an informal complaint to the Vice Principal of Snowden regarding the lack of "read aloud" accommodations. (*Id.* at 6:22.) Between November 4, 2015, and November 7, 2015, Snowden reported Plaintiff Reid to the Department of Children's Services ("DCS") for child neglect. (*Id.* at 6:23.) An investigation revealed that someone at Snowden reported Plaintiff Reid to DCS for giving Plaintiff A.S. her prescribed medicine. (*Id.*) The DCS investigation did not

result in any adverse findings against Plaintiff Reid.  (*Id.*)  Plaintiffs allege that Snowden made this report in retaliation for Plaintiff Reid's complaints regarding Snowden's treatment of Plaintiff A.S.  (*Id.* at 6:22-23.)  On December 10, 2015, Plaintiff Reid filed a formal complaint with the United States Department of Education's Office for Civil Rights ("OCR") regarding Snowden's failure to provide Plaintiff A.S. with proper accommodations during testing.  (*Id.* at 6:24.)  On September 9, 2016, the OCR issued a report and found that Plaintiff A.S. had been improperly denied read aloud accommodations in violation of the Rehabilitation Act and ADA.  (*Id.* at 8:28.)

During the 2016-2017 school year, Plaintiff A.S. began attending Central.  (*Id.* at 8:29.)  Plaintiffs assert that in March of 2018, Central required Plaintiff A.S. to take a military aptitude test but failed to provide any accommodations related to her visual disabilities.  (*Id.* at 14:50.)  As a result, Plaintiff A.S. suffered a migraine and seizures.  (*Id.*)  On April 18, 2018, Plaintiff Reid filed a second OCR complaint regarding Plaintiff A.S.'s military aptitude test.  (*Id.* at 14:52.)  In response, Defendant SCS and Central offered to voluntarily resolve the issue.  On August 22, 2018, OCR received an executed resolution agreement between Central and Plaintiffs.  (*Id.* at 14:52-53.)

Plaintiffs allege that Defendants' failed to provide physical accommodations for A.S.'s mobility needs on multiple occasions.  Plaintiffs assert that a majority of Central's external doors, that provide access for handicapped persons, remained locked during school hours, posing a constant barrier to A.S.'s access to the building.  (*Id.* at 8:30-33.)  To gain access to the facilities, Plaintiff A.S. or her assistant must bang on the outside door, in the hope that a passing student or teacher will be available to let her in.  (*Id.* at 8:30-31.)  Plaintiff A.S. states that as a result of these locked doors, she has been unable to access Central.  (*Id.* at 8:33.)  Specifically, Plaintiff alleges that on multiple occasions she remained locked out of the school for thirty minutes or more.  (*Id.*)  Plaintiffs also assert that on April 5, 2017, someone activated Central's fire alarm system.  (*Id*. at

10:39.) Plaintiff A.S., who requires the use of an elevator to move from floor to floor within any building, was in a second-story room during this time. (*Id.* at 10-11:39.) Elevators are removed from service when the fire alarm is pulled, and no Central employee came to assist Plaintiff A.S. (*Id.*) Further, Plaintiff A.S. was not informed by any Central employee that there was no actual fire in the building, which left Plaintiff A.S. in fear that she was in danger. (*Id.*). In response to this perceived danger, Plaintiff A.S. used her cell phone to contact the Memphis Fire Department. (*Id.* at 11:40.) Subsequently, Central held Plaintiff A.S. in violation of its Cell Phone Policy. (*Id.*)

Plaintiffs allege that Defendants failed to provide Plaintiff A.S. with proper medical accommodations. Plaintiff A.S. continually requires a catheter which must be changed every three hours. (*Id.* at 3-4:11.) During the 2016-2017 school year, Plaintiffs assert that Defendants repeatedly lost or misplaced Plaintiff A.S.'s medical supplies related to the catheterization procedure. (*Id.* at 9:35.) Further, Plaintiffs assert that in January 2017, Plaintiff Reid was forced to leave work and perform Plaintiff A.S.'s catherization procedure when Central's nurse failed to show up to school. (*Id.* at 10:37.) During the procedure, Plaintiff A.S. must be naked from the waist down for a period of time, often exceeding twenty minutes. (*Id.* at 15:57.) Plaintiffs allege that Central failed to turn on the heat in the room where Plaintiff A.S.'s catherization procedure was performed, exposing her to frigid temperatures. (*Id.*) Plaintiff A.S. contends that Central subjected her to these cold temperatures during her procedure in retaliation for Plaintiffs' protests regarding Defendants' failure to accommodate Plaintiff A.S.'s needs. (*Id.*).

Plaintiffs filed their original Complaint against Defendants on January 22, 2019, asserting violations of Section 504 of the Rehabilitation Act of 1973 ("§ 504"), the Americans with Disabilities Act, ("ADA"), and 42 U.S.C.S. § 1983 ("§1983"). Defendants now move to dismiss all counts included in the Complaint. Pursuant to their 12(b)(6) motion, Defendants argue that

Plaintiffs fail to state a claim upon which relief can be granted. Specifically, Defendants argue that the Complaint alleges the denial of Plaintiff A.S.'s Free and Appropriate Public Education ("FAPE") and that Plaintiffs have failed to exhaust the administrative procedures required by the Individuals with Disabilities Education Act ("IDEA"). (ECF No. 12.)

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson Cnty., Tenn.*, 8l4 F.2d 277, 279 (6th Cir. 1987)).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (The court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true."). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, although the complaint need not contain detailed facts, its "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S.

at 555). Determining whether a complaint states a plausible claim is "context-specific," requiring the Court to draw upon its experience and common sense.[1] *Iqbal*, 556 U.S. at 129.

## ANALYSIS

The IDEA ensures that children with physical or intellectual disabilities receive a FAPE. 20 U.S.C. § 1412(a)(1)(A); *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748, 197 L. Ed. 2d 46 (2017). Addressing how the IDEA interacts with other laws, 20 U.S.C. § 1415(l) provides:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act of 1973 [including § 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

*Fry,* 137 S. Ct. at 750 (alterations in original). Therefore, a plaintiff must exhaust the IDEA's administrative remedies before filing a lawsuit under the ADA, the Rehabilitation Act, or other similar laws when seeking relief that is also available under the IDEA. *Id.* at 752. However, if the plaintiff does not seek such relief, that is, if the gravamen of the plaintiff's suit is something other than the denial of a FAPE, exhaustion of the IDEA's administrative remedies is not necessary. *Id.* at 748.

In *Fry*, the Supreme Court provided two hypothetical questions that offer a "clue" to whether the gravamen of a plaintiff's complaint seeks relief for denial of a FAPE, or instead, addresses disability-based discrimination that cannot be remedied under the IDEA. *Id.* at 756. The questions are as follows:

---

[1] Although the Court's decision to grant or deny a motion to dismiss "rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (alterations in original) (*quoting Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)).

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theatre or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?

*Id.* (emphasis omitted). If the answer to both questions is yes, then it is unlikely that the complaint is about the denial of a FAPE, and exhaustion is not required. *Id.* If, however, the answer to both questions is no, then the complaint probably does concern a FAPE, and exhaustion of the IDEA's administrative remedies is required. *Id.*

Here, a challenge this Court faces in applying the *Fry* framework, is that Plaintiffs filed a five-count complaint that relies on a myriad of factual allegations, where the *Fry* Court only considered the gravamen of a single claim, *i.e.*, whether the plaintiff was required to exhaust administrative remedies under the IDEA before filing suit against the public school for denying her use of a service animal. *Id.* at 752. The Third Circuit articulated the pitfalls of applying *Fry's* single-claim analysis to a multi-faceted complaint:

> The word "gravamen" bespeaks concern with both individual claims as well as the collection of claims called a complaint. [] To apply the *Fry* test without consideration of the actual claims could result in situations where claims that are included in a complaint because they involve the same parties or course of events but do not involve the provision of a FAPE get swept up and forced into administrative proceedings with claims that are seeking redress for a school's failure to provide a FAPE. Although these administrative proceedings ensure that FAPE claims are first reviewed by agencies with the appropriate subject matter expertise, these agencies do not employ similar expertise when it comes to claims that do not involve the provision of a FAPE. For example, if a student who was challenging the sufficiency of her IEP also happened to be physically assaulted on the bus going to school, one could envision the plaintiff bringing a single complaint with different claims arising from her school experience, one of which seeks relief for physical injuries sustained while on the school bus and which has nothing to do with her access to a FAPE and IDEA relief. Surely the Court would not have envisioned that such a claim would be subject to the IDEA's procedural requirements, nor would subjecting such a claim to these procedural requirements necessarily result in any benefit to either the parties or court reviewing the matter at a later date.

*Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 132–33 (3rd Cir. 2017). Applying this rationale, the *Wellman* Court individually analyzed each charge in the plaintiff's three-count complaint under the *Fry* framework and concluded that each one was subject to exhaustion under the IDEA. *Id.* at 134-35. Other courts have faced the same predicament and, like the Third Circuit in *Wellman*, applied the *Fry* framework to individual claims within a complaint. *See Doucette v. Georgetown Pub. Sch.*, No. 18-1160, 2019 WL 4010291, at *7 (1st Cir. Aug. 26, 2019) (holding that despite the complaint's "express allegations of FAPE deprivation and inadequate educational services," the defendants' refusal to allow the minor plaintiff use of his service animal in school, was simple discrimination and served as the gravamen of the claim, "irrespective of the IDEA's FAPE obligation" raised in the complaint) (*quoting Fry*, 137 S. Ct. at 756); *P.G. by & through R.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp. 3d 891, 899 (M.D. Tenn. 2018) (explicitly examining each claim under the *Fry* test); *see also* D*urbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1190 (11th Cir. 2018) and *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 785 (10th Cir. 2013) (both employing a claim-by-claim approach to analyze the IDEA exhaustion requirement).

This Court therefore, examines each of Plaintiffs' claims individually under the Supreme Court's two-part test.

 A. <u>*Counts I & II – Plaintiffs' § 504 and ADA Claims Do Not Require Exhaustion*</u>

At the beginning of each charge in their Complaint, Plaintiffs "restate[] and reallege[]" the entire fact section, which contains information about Plaintiff A.S.'s education and her alleged treatment by Defendants, including her claims of discrimination, lack of accommodation, and retaliation. In Counts I and II, Plaintiffs contend that Defendants violated § 504 of the Rehabilitation Act and the ADA, which both provide non-discriminatory access to public institutions. *Fry*, 137 S. Ct. at 756 (acknowledging the possibility that although the same conduct

could violate § 504, the ADA, and the IDEA, a complaint could "seek relief for simple discrimination, irrespective of the IDEA's FAPE obligation"). Because of the overlapping nature of these statutes and the broadly asserted facts Plaintiffs provided for both claims, this Court will consider Counts I and II together.

Defendants argue that Plaintiffs' referencing deficiencies in A.S.'s IEP, indicate that the gravamen of Plaintiffs' suit is the denial of a FAPE, which should trigger the exhaustion requirements of the IDEA. (ECF No. 12:1, 8). As a result of Plaintiffs' failure to exhaust the administrative remedies available under the IDEA before filing suit, Defendants contend that the case should be dismissed entirely or in the alternative, set aside until Plaintiffs fulfill the exhaustion requirement. (*Id*.) In response, Plaintiffs argue that "though referencing IDEA," they "do not seek relief under IDEA in any count of their Complaint" but rather, insist that "[e]very claim has its gravamen in the ADA or Rehabilitation Act" and that for any claim "tangentially related to education," relief under the IDEA would be futile because Plaintiff A.S. is not facing any ongoing or prospective harm. (ECF No. 14:1, 14)[2].

Plaintiffs reference the IDEA on multiple occasions in their Complaint—specifically noting, "[t]o allow Plaintiff A.S. to receive a [FAPE], Plaintiff A.S. has had yearly [IEPS]." (ECF No. 1, 4:17.) Plaintiffs go on to make IDEA-related claims, alleging: "once Plaintiff A.S. began school at Snowden it became apparent that Snowden would not allocate the necessary resources

---

[2] In this Court's view, language used by Plaintiff's Counsel in the Response to Defendant's Motion to Dismiss appears to be intemperate, inappropriate and borders on being uncivil. (ECF No. 14, 12.) (*e.g.* "Defendants use this utterly deceitful language as support for the argument that . . . ." ; "Defendants do not [ ] stop at attempting to grossly mislead the Court . . . but instead take this absurdity a step further . . . ."; "Having travelled this far down the rabbit hole, the argument becomes utterly surreal . . . ."; "They then, through this solipsistic logic (resembling nothing more than Tweedle Dee and Tweedle Dumb casting aspersions at each other) . . . ."). The Court suggests Plaintiff's Counsel review again Appendix C of the Local Rules for the United States District Court for the Western District of Tennessee, Guidelines for Professional Courtesy & Conduct. *See* W.D. Tenn. LR app. C, Preamble ("A lawyer owes to opposing Counsel a duty of courtesy, fairness and cooperation."); and W.D. Tenn. LR app. C, R. 12 ("A lawyer should maintain a cordial and respectful relationship with opposing counsel.").

to fully comply with Plaintiff A.S.'s yearly IEP," (*Id.* at 5:17); and that "[d]espite the requirement listed of Plaintiff A.S.'s IEP, she was not provided with read-aloud accommodations. (*Id.* at 5-6:21.)

However, Plaintiffs make numerous allegations of disability-based discrimination that are distinct from the denial of a FAPE. Plaintiffs claim that, at Central High School, "a majority of external doors that provided access for handicapped individuals would routinely remain locked during school hours," keeping Plaintiff A.S. stranded outdoors (*Id.* at 8:30); that Central mishandled Plaintiff's medical supplies and failed to provide adequate medical treatment (*Id.* at 9:35, 15:57); that after a fire alarm was activated, "no Central employee came to assist Plaintiff A.S." and as a result, she was "left without an evacuation plan" (*Id.* at 11:39); that Central refused to provide accommodations for Plaintiff A.S. to accompany her classmates on a field trip (*Id.* at 7:27), and finally, that Plaintiff was unable to attend classes meeting on Central's second story during two elevator outages at Central. (*Id.* at 13:49, 16:58.)

In comparing these categories of factual allegations—claims of deficiency in Plaintiff A.S.'s IEP and claims of disability-based discrimination—the issue is whether Plaintiffs are seeking relief for the denial of a FAPE or redress for other discrimination claims. To make this determination, the Court must look to the "substance of, rather than the labels use in, [Plaintiffs'] complaint." *Fry*, 137 S. Ct. at 755 ("The use (or non-use) of particular labels and terms is not what matters. The inquiry, for example, does not ride on whether a complaint includes (or, alternatively, omits) the precise words(?) 'FAPE' or 'IEP.'").

Here, despite Defendants' arguments to the contrary, the Court finds that the Complaint primarily alleges that Plaintiff A.S. was discriminated against based on her disability, not that she was denied a FAPE. To the extent FAPE was referenced, it appears to have been offered to provide

10

context for Plaintiffs' § 504 and ADA claims. Indeed, it is difficult to imagine how a disabled student, who is receiving an IEP and suing her public school for discrimination, could adequately describe her situation without mentioning the IDEA, FAPE, or her IEP.

Applying the *Fry* test provides an additional clue as to the gravamen of these charges. The first question to consider is whether the conduct in Plaintiff A.S.'s claims, related to Central's failure to provide access to its facilities or to accommodate A.S. on a group outing, could have occurred at another public facility, such as a public theatre or library. *Fry*, 137 S. Ct. at 756. The clear answer is yes. A wheelchair-bound person could sue a public library for failing to provide elevator access to the second floor and a staff member at that library could sue if her employer failed to accommodate for her wheelchair, when transporting other staff members to an offsite meeting. The second question is whether an adult in Central High School, such as an employee or visitor, could bring similar claims as Plaintiff A.S. *Fry*, 137 S. Ct. at 756. Again, the answer is yes. A physically disabled adult visitor, intent on touring the second story classrooms, could sue the school for failing to provide access and, like the library example above, a teacher could sue the school for failing to accommodate his disability at an offsite teachers' meeting. Under both hypotheticals, the plaintiff could bring essentially the same claims as Plaintiffs,' which suggests that the gravamen of this Complaint is the equality of access to public facilities, not the denial of a FAPE. Therefore, exhaustion under the IDEA would not be required for Plaintiffs' claims related to physical access and field trip accommodations.

Additionally, the Complaint also contains several allegations regarding Defendants' handling of Plaintiff A.S.'s medical needs, which Plaintiffs claim violated the ADA and § 504. These include the following: failing to provide heat to rooms where Plaintiff A.S.'s catherization procedures took place, (ECF No. 1, 15: 56-7); failing to secure Plaintiff A.S.'s medical supplies,

11

(*Id.* at 9: 34-6; 10:36); and failing to provide nurses to facilitate Plaintiff A.S.'s catherization procedure, (*Id.* at 10: 37-8). These claims, however, do not fit neatly into *Fry's* hypotheticals because it is difficult to divorce these allegations from the school nurse setting. However, *Fry's* clues are not always helpful in determining the gravamen of a plaintiff's complaint. *See Fry* S.Ct. at 759 ("These clues make sense only if there is no overlap between the relief available under [the IDEA and other federal laws]") (Alito, J., concurring) (alterations in original). *See also Sophie G. v. Wilson Cty. Sch.*, 742 Fed.Appx. 73, 79 (6th Cir. 2018) ("*Fry's* clues will not always assist courts.").

Here, asking whether Plaintiff A.S. could sue a public library for failing to properly store her medical supplies, for failing to provide a nurse to perform the catherization procedure, or for failing to heat the room where her catherizations take place, does not assist the Court. The more helpful question is whether essentially the same claims could be brought against another public entity offering medical services. *See Sophie G.*, 742 Fed.Appx at 79 (noting that, in the case of a disabled child who was denied access to an after-school daycare because the child was not toilet trained, the pertinent question was whether the same claim could be brought against another public childcare provider). If, for instance, that public entity provided nursing services for the general public, but refused to accommodate disabled individuals, those actions may violate the ADA or § 504. *Id.* at 80.

The necessity of providing medical assistance to Plaintiff A.S. does, to some extent, involve access to education. Without such accommodations, A.S. might not be able to receive a FAPE. However, the Complaint also alleges disability-based discrimination and the denial of equal access to the school itself. *See* (ECF No. 1, 17:59) (alleging that Defendants are "[f]ailing or refusing to provide necessary medical procedures to simply allow Plaintiff A.S. to be physically

12

present at school"). Although these allegations could constitute a FAPE violation for failing to adhere to Plaintiff's IEP, the Court concludes that the crux of the Complaint, construed in the light most favorable to the Plaintiff, is a claim of discrimination under § 504 and the ADA and therefore, not subject to exhaustion.

Finally, Plaintiffs allege that Defendants' failure to provide read aloud accommodations caused Plaintiff A.S. to have seizures, thus stating a cause of action under § 504 and the ADA. (ECF No. 1, 5-6, 13-14, ¶¶ 20-21, 50). Although this appears to be a claim for the denial of a FAPE, which would trigger exhaustion under the IDEA, there are certain exceptions to this requirement. One such exception occurs when exhaustion "would be futile or inadequate to protect the plaintiff's rights." *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000). To illustrate, in *Covington*, the plaintiff alleged that the defendant school district violated a number of federal laws when it locked her disabled son in a "time-out room" that could only be opened from the outside. *Id.* at 913. The defendant school argued that the plaintiff was required to exhaust the IDEA's administrative process before pursuing a lawsuit. *Id.* The Court rejected the defendant's argument. *Id.* The Court reasoned that, because the injured child had already graduated from the school, because his injuries were "wholly in the past," and because money damages were the only remedy that could make the plaintiff whole, exhaustion of the IDEA's administrative procedures would be futile. *Id.* at 917 (noting that money damages are unavailable through the IDEA's administrative remedies). The Court held that when exhaustion would be futile, and money damages the only appropriate remedy, exhaustion is not required. *Id.* at 918. The burden of demonstrating futility of exhaustion rests on the party seeking to bypass such procedures. *Id.* at 917 (citing *Honig v. Doe*, 484 U.S. 305, 326-27 (1988)).

13

Here, the Court need not consider whether Plaintiffs' claims related to the seizures concern the denial of a FAPE. Plaintiffs are not seeking changes to Plaintiff A.S.'s IEP, or any other remedy provided by the IDEA's administrative processes. Rather, Plaintiffs are seeking money damages for the seizures allegedly caused by Defendants' failure to provide read-aloud accommodations. Like the plaintiff in *Covington*, Plaintiff A.S.'s injuries are in the past. Indeed, Plaintiff no longer attends Snowden, where the Complaint alleges the first seizures occurred and although Plaintiff A.S. still attends Central, the second bout of seizures she claims to have suffered are also in the past. The IDEA's administrative processes cannot undo or redress the harm Plaintiff A.S. suffered because of these seizures. Therefore, exhaustion of the IDEA's administrative processes would be futile and is not required for Plaintiffs to proceed with § 504 and ADA claims regarding Plaintiff A.S.'s seizures.

### B. *Count III – Plaintiffs' § 1983 Claim Requires Exhaustion*

In Count III, Plaintiffs allege that Defendants violated "The Civil Rights Act of 1983." (ECF No. 1, 19:75-82.) The Court construes this as a claim regarding alleged violations of 42 U.S.C. § 1983. This claim requires exhaustion because its crux is the denial of a FAPE. Specifically, the Complaint alleges Plaintiff A.S. has "a substantive due process right of continued enrollment free from arbitrary harassment and discrimination" and that Defendants deprived her of this right. (ECF No.1, 20:77.) Further, the Complaint asks the Court "to compel [Defendants'] compliance with the rules and procedures already in place to prevent Defendants from further discriminating and retaliating against Plaintiff A.S. and mandating that Defendants afford Plaintiff any and all rights and procedures afforded." (*Id.* at 20:81.)

Although the Complaint is vague as to exactly what Constitutional or due process rights Defendants denied Plaintiffs, or which specific policies Plaintiffs seek to enforce, the essence of

Plaintiffs' claim is that Defendants did not adequately follow procedures, and, as a result, Plaintiff A.S. was denied "continued enrollment" at Central, "free from arbitrary harassment and discrimination." This claim fails the *Fry* test because it could not be made against a different public facility outside an educational context, nor could an adult visitor or employee bring such a claim against the school. *Fry*, 137 S. Ct. at 756. The gravamen of this claim is that A.S. was denied a FAPE. By asking the Court to compel compliance with policies that ensure "continued enrollment" for A.S., Plaintiffs are seeking a remedy that is also available under IDEA. Therefore, the claim must proceed through the IDEA's administrative process before Plaintiffs can pursue remedies in federal court.

### C. *Counts IV & V – Plaintiffs' Retaliation Claims Do Not Require Exhaustion*

In Counts IV and V, Plaintiffs allege that Defendants retaliated against them for reporting discriminatory conduct, in violation of § 504 and the ADA. (ECF 21:88, 94.) As this Court previously held, claims of retaliation are not subject to the exhaustion requirement of the IDEA. *Hicks v. Benton Cty. Bd. of Educ.*, 222 F. Supp. 3d 613, 634 (W.D. Tenn. 2016) (finding that although plaintiff raised concerns about the defendant school's implementation of a child's IEP, "the gravamen of her suit . . . [was] clearly the loss of her job because of her complaints" and thus, she was not subject to exhaustion under the IDEA) ((*citing Covington*, 205 F.3d at 917) ("[E]xhaustion is not required under the IDEA in certain circumstances. Exhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights.").

According to Plaintiff Reid, Snowden filed a false report of child neglect against her in retaliation for reporting the school's failure to provide Plaintiff A.S. read-aloud accommodations, which was an IEP violation. (ECF No. 1, 6:23.) Like the complaint in *Hicks*, the allegation here

15

is that Plaintiff Reid suffered retaliation for reporting an IEP violation.  The gravamen of this complaint therefore, is against Snowden's retaliatory action, not the school's violation of a FAPE.

Similarly, Plaintiff A.S. raises claims of retaliation against Central.  To name two, Plaintiff A.S. asserts that Central held her in violation of the school's Cell Phone Policy after she called the Memphis Fire Department while trapped on the second-story during a fire alarm. (*Id.* at 11:40.) She also contends that after she complained about her discriminatory treatment, Central retaliated against her by refusing to turn on the heat in the room where she underwent her daily catherization procedures.  (*Id.* at 15:57.)

The *Fry* test is instructive in determining the gravamen of Plaintiff A.S.'s retaliation claims.  *Fry*, 137 S. Ct. at 756.  First, it is plausible that Plaintiff A.S. could bring these claims against a different public facility.  Imagine if Plaintiff A.S. reported an ADA violation against a library, and the library subsequently issued retaliatory late fees, or refused to turn on the heat in the only bathroom with wheelchair access.  Clearly, a retaliation suit could be brought against the library.  Second, an adult employee of Central could bring a similar claim against the school if, in retaliation for reporting an ADA violation, the school held the employee in contempt of some school policy.

In both of Plaintiffs' situations, an individual could file a claim for retaliation, separate from any complaints regarding the deficiency of educational services.  Construing the allegations in the Complaint in the light most favorable to Plaintiffs, both Plaintiff Reid and Plaintiff A.S. state cognizable claims for retaliation that are separate from the denial of a FAPE, and therefore, not subject to exhaustion.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendants' 12(b)(6) Motion to Dismiss, as it relates to Plaintiffs' § 504, ADA, and retaliation claims in Counts I, II, IV, and V of the Complaint, is **DENIED**. Defendants' Motion to Dismiss, as it relates to Plaintiffs' § 1983 claim in Count III of the Complaint, is **GRANTED**.

**IT IS SO ORDERED** this 20th day of September 2019.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
United States District Judge
