# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

A.S., BY HER NEXT FRIEND
AND MOTHER, JANIELE REID,
and, JANIELE REID, individually,

      Plaintiffs,

v.

SHELBY COUNTY BOARD OF EDUCATION,
and, GREG MCCULLOUGH,
in his individual and official capacities,

      Defendants.

Case No: 2:19-cv-02056-JTF

JURY DEMANDED

---

## PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WITH INCORPORATED MEMORANDUM OF LAW

---

**TO THE HONORABLE JUDGE JOHN T. FOWLKES, JR. OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSE AT MEMPHIS:**

COMES NOW the Plaintiffs, A.S. and Janiele Reid (hereinafter "Plaintiff A.S.", "Plaintiff Reid", respectively, or collectively as "Plaintiffs"), by and through counsel, and make application to this Court for a Temporary Restraining Order and Preliminary Injunction prohibiting the Defendants Shelby County Board of Education (hereinafter "Defendant SCS")[1], and Greg McCullough (hereinafter "Defendant McCullough") (together "Defendants"), from certain acts more specifically enumerated hereinbelow. For grounds, Plaintiff would respectfully show as follows:

### I. Statement of the Case

This application arises in the context of an action for disability discrimination in violation

---

[1] References to "CHS" or "CHS" refer to SCS' agents and employees, and allegations against them are allegations against SCS.

of both Title II of the Americans with Disabilities Act, 42 U.S.C. § 121010 *et. seq.* (hereinafter "ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (hereinafter "Rehabilitation Act", or collective "Disability Discrimination Statutes"). Plaintiff A.S. is a senior at Central High School ("CHS") in Memphis, Tennessee, who is alleging that Defendants discriminated against her, as well as retaliated against Plaintiffs for reporting these acts of discrimination, in violation of the Disability Discrimination Statutes. Specifically, Plaintiffs have alleged that Defendants intentionally withheld disability accommodations from Plaintiff A.S., which resulted in her having seizures on <u>multiple occasions</u>. (ECF No. 1 ¶¶ 21, 51). Plaintiff A.S. has been hospitalized as a result of the seizures induced by Defendants, and when informed of the severity of Plaintiff A.S.'s condition, Defendant McCullough disregarded Plaintiffs' complaints. After reporting these instances of discrimination, as well as many others, Defendants retaliated against Plaintiffs by, *inter alia*, falsely and maliciously reporting Plaintiff Reid to the Department of Children's Services, (ECF No. 1 ¶ 22); failing or refusing to provide necessary physical accommodations, or transportation services, (ECF No. 1 ¶¶ 25-27); failing or refusing to provide necessary elevator access within CHS, (ECF No. 1 ¶¶ 49, 58); failing or refusing to provide wheelchair accessible routes to unlocked exterior doors during freezing temperatures, or otherwise, (ECF No. 1 ¶¶ 30-33); failing or refusing to provide heat to rooms where medical procedures are to be performed when the temperatures outside are at or below freezing, (ECF No. 1 ¶¶ 56-57); and, failing or refusing to provide necessary medical procedures to simply allow Plaintiff A.S. to be physically present at school (ECF No. 1 ¶¶ 37-38).

## II. Applicable Law and Argument

Federal Rule of Civil Procedure 65 establishes the relevant procedures for the granting of a preliminary injunction. Rule 65(a)(1) requires notice to the adverse party before a preliminary

injunction is issued. *See* 13 MOORE'S FEDERAL PRACTICE, § 65.21 (Matthew Bender 3d ed.).

Under the general notice provision of Rule 6(c)(1), at least 5 days' notice of a motion for

preliminary injunction is required. *See* 1 Moore's Federal Rules Pamphlet § 65.3 (Matthew

Bender).

> The purpose of a preliminary injunction is merely to preserve the relative
> positions of the parties until a trial on the merits can be held. Given this limited
> purpose, and given the haste that is often necessary if those positions are to be
> preserved, a preliminary injunction is customarily granted on the basis of
> procedures that are less formal and evidence that is less complete than in a trial on
> the merits. A party thus is not required to prove his case in full at a preliminary-
> injunction hearing[,] and the findings of fact and conclusions of law made by a
> court granting a preliminary injunction are not binding at trial on the merits.

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (internal citations omitted). When

considering a motion for preliminary injunction, a district court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits;
> (2) whether the movant would suffer irreparable injury without the
> injunction;
> (3) whether issuance of the injunction would cause substantial harm to
> others; and
> (4) whether the public interest would be served by the issuance of the
> injunction.

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir.

2007) (citing *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). "The four

considerations applicable to preliminary injunction decisions are factors to be balanced, not

prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003)

(citing *In re De Lorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)).

## A.     Strong Likelihood of Success on the Merits

Plaintiff A.S. is likely to succeed on the merits of her Title II and Rehabilitation Act

Complaint. Courts often analyze a Plaintiff's claims under both Title II and Section 504 together,

"since the results are the same under both Acts." *MX Group, Inc. v. City of Covington*, 106 F.

Supp. 2d 914, 915 (E.D. Ky. 2000); *see e.g.*, 42 U.S.C. §12201(a) (ADA is not to "be construed to apply a lesser standard than the standards applied under . . . Rehabilitation Act of 1973 . . . ."); *Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir. 1997) (explaining that because "standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other"); *see also Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 731 (9th Cir. 1999) (noting that Congress has instructed that both ADA and Rehabilitation Act are to be interpreted consistently); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 44-46 (2d Cir. 1997) (holding that language under ADA and Rehabilitation Act similarly ban discrimination by a public entity).

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 903 (6th Cir. 2004) (quoting §202, 42 U.S.C. §12132). "Public entity" includes "any state or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.* (quoting §201, 42 U.S.C. §12131(1)(A) & (B)). Title II proscribes discrimination against qualified individuals with a disability. *See* 42 U.S.C. §12131(2). "[Q]ualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. §12131. The regulations interpreting Title II state, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modification is necessary to avoid discrimination on the basis of disability, unless the public

entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity." 28 C.F.R. §35.130(b)(7). Therefore, any accommodation on the part of the entity only needs to be "reasonable." *Johnson v. City of Saline*, 151 F.3d 564 (6th Cir. 1998). The ADA's prohibition of discrimination in services, programs, or activities "encompasses virtually everything a public entity does." *Johnson*, 151 F.3d at 569.

The ADA grants the Attorney General authority to promulgate regulations to implement its provisions. §204, 42 U.S.C. §12134. Pursuant to §204, the Attorney General adopted 28 C.F.R. §35.151, which provides that alterations of facilities commenced after January 26, 1992, "by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible and usable by individuals with disabilities." *Id.* §35.151(b). The regulation further specifies that alterations should meet certain accessibility standards, *id.* §35.151(c), and that altered streets and pedestrian walkways must contain curb ramps. *Id.* §35.151(e). Section 35.151 is part of a broader regulatory scheme that aims to effectuate §202 of the ADA. *See* 28 C.F.R §35.101. The scheme makes explicit that "no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." *Id.* §35.149 (emphasis added).

To make out a *prima facie* case under Title II of the ADA, a plaintiff must establish that (1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability. *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir.

2003); *see also Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995) (finding that in order to establish disability discrimination under Title II of the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability).

The first two elements of Plaintiff A.S.'s *prima facie* case for disability discrimination are not reasonably in dispute. First, Plaintiff A.S. has cerebral palsy, hydrocephalus, seizure disorder and a neurogenic bladder. (ECF No. 1 ¶¶ 10-11). Plaintiff A.S. has been diagnosed with spastic diplegia, focal epilepsy, optical myopia, and is being monitored for optic nerve atrophy in both eyes. (*Id.*) Plaintiff A.S. has physical disabilities that adversely impact her mobility. (*Id.*) Plaintiff A.S. has undergone four back and spinal cord surgeries, been confined to a wheelchair for the majority of her life and continually requires a catheter, which must be changed every three hours. (*Id.*) Plaintiff A.S. has a history of seizures. (*Id.*) Plaintiff A.S. is physically disabled under the Americans with Disabilities Act of 1990. (*Id.*) Defendants have acknowledged Plaintiff A.S. is physically disabled by providing her with an Individualized Education Plan since she was in the fourth grade. (ECF No. 1 ¶ 17). Second, as a minor residing within Shelby County, Tennessee, Plaintiff A.S. is otherwise qualified to receive the benefit in question, i.e. access to her public-school facilities and activities. Accordingly, whether Plaintiff A.S. has a strong likelihood of success on the merits rises and falls on the question of whether she has been excluded from the benefit due to discrimination solely on the basis of her disability.

To prove discrimination in the education context, "something more than a mere failure to provide the free appropriate education under the [Individuals with Disabilities Education Act (hereinafter "IDEA")]" must be shown. *Burton v. Cleveland Heights-University Heights City*

*Sch. Dist. Bd. of Educ.*, 2017 U.S. Dist. LEXIS 161006, at *14-15 (N.D. Ohio Sep. 29, 2017) (quoting *Sellers v. Sch. Bd. of Manassas*, 141 F.3d 524, 528-29 (4th Cir. 1998)). The Sixth Circuit has consistently held that a violation of FAPE and IDEA is not enough to establish an ADA or Section 504 claim. Rather, such claims "*further require*[] that the [plaintiff] must ultimately prove that the defendant's failure to provide [the plaintiff] with a free appropriate public education was *discriminatory*." *G.C. v. Owensboro Pub. Schs.*, 711 F.3d 623, 635 (6th Cir. 2013) (emphasis in original) (quoting *Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 Fed. Appx. 162, 167 (6th Cir. 1988)).

Plaintiffs draw the Court's attention to one section in its Order Granting in Part and Denying in Part Defendant' Motion to Dismiss. (ECF No. 32). Specifically:

> [T]he Court finds that the Complaint primarily alleges that Plaintiff A.S. was discriminated against based on her disability, not that she was denied a FAPE. To the extent FAPE was referenced, it appears to have been offered to provide *context* for Plaintiffs' §504 and ADA claims. Indeed, it is difficult to imagine how a disabled student, who is receiving an IEP and suing her public school for discrimination, could adequately describe her situation without mentioning the IDEA, FAPE, or her IEP.

(*Id.* at 10) (emphasis added). The Court further ruled that "the crux of the Complaint, construed in the light most favorable to the Plaintiff, is a claim of discrimination under §504 and the ADA . . ." thereby making clear that Plaintiffs have sufficiently alleged discriminatory conduct under §504 and the ADA. The remaining questions are whether Plaintiffs can support their claim and whether injunctive relief is the appropriate remedy.

To properly consider the facts underpinning this litigation, Plaintiff A.S.'s situation should be viewed holistically. To do otherwise would be to risk marginalizing Defendants' conduct, and trivialize the parade of horribles that has been thrust upon Plaintiff A.S. and her Mother. Indeed, many single instances of Defendants' conduct described in the complaint, which

could technically be a violation of the Disability Discrimination Statutes, would not normally result in a federal lawsuit. Ergo, every time an individual's entrance to a public building is obstructed by a locked door, one should not run to the courthouse seeking relief. Likewise, a prospective defendant's failure to answer a telephone call to come unlock a door should not warrant a judicial remedy. A rational person would not demand satisfaction after a single encounter with a disabled elevator, which prohibited her from traveling between floors. Being subjected to a freezing room, in and of itself, would not cause a rational person to file a federal lawsuit. However, in this case, Plaintiffs would aver they have made *dozens* of verbal and written complaints to Defendants regarding these situations, as well as the many others detailed in Plaintiffs' Complaint. (*See* ECF No. 1). Plaintiffs would aver that these problems continue to occur, despite ample notice to Defendants. Defendants' pattern of bad faith and deliberate indifference to rectify these incidents becomes clear when these incidents are viewed as a whole, and the situation is appalling.

In addition to the incidents described above, Defendant McCullough committed an egregious act of discrimination in March 2018 (ECF No. 1 ¶¶ 50-51) when he denied Plaintiff A.S. her reasonable accommodations during a military aptitude test. (*Id.*) The fact is that Defendant, SCS has done this before. In 2015, Defendant SCS denied Plaintiff A.S. her reasonable accommodations during a district mandated test, which resulted in: (1) Plaintiff A.S. suffering seizures; (2) Plaintiff A.S. being hospitalized as a result of those seizures; (3) Plaintiff Reid filing a formal complaint with the United States Department of Education – Office for Civil Rights (hereinafter "OCR"); (4) The OCR finding that Defendant SCS had violated the Disabilities Discrimination Statutes; and (5) Defendant SCS retaliating against Plaintiffs by falsely reporting Plaintiff Reid to the Department of Children Services. (*Id.* ¶¶ 21-23). When

Plaintiff Reid informed Defendant McCullough that the denial of reasonable accommodations previously caused Plaintiff A.S. to suffer seizures and hospitalization, Defendant McCullough minimized and ultimately dismissed Plaintiff Reid's grievance. Defendant McCullough ignored her concerns stating that "there will be bumps in the road that we have to work with." The interaction between the parties was captured on video.

"[I]ntentional discrimination may be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *McCadden v. City of Flint*, 2019 U.S. Dist. LEXIS 63244, at *18 (E.D. Mich. Apr. 12, 2019) (citing *Velzen v. Grand Valley State Univ.*, 902 F. Supp. 2d 1038, 1046 (W.D. Mich. 2012)). Plaintiffs aver that Defendants have been put on repeated notice about their failures to provide reasonable accommodations to Plaintiff A.S., and, yet, these failures continue to occur. The only inference to be made is that Defendants are aware that their conduct falls far short of providing reasonable accommodations to Plaintiff A.S., and that they are deliberately indifferent as to efforts to rectify the situations. This pattern of conduct demonstrates Defendant' bad faith, and/or gross misjudgment. Accordingly, Plaintiffs aver that Plaintiff A.S. has a strong likelihood of success in demonstrating discrimination against Defendants based on her disability. However, she should not be subjected to this continued harassment during the course of this litigation, or ever again.

In the instant application for relief, Plaintiffs seek specific and limited relief designed to ensure her reasonable access to CHS's facilities during her crucial last semester of high school. Specifically, she seeks the following relief:

1. That Defendants be required to provide Plaintiff A.S. with access to unlocked, wheelchair-accessible exterior doors at CHS;

2. That Defendants be required to notify Plaintiff Reid of any activity that deviates from Plaintiff A.S.'s usual schedule via email at least 72 hours in advance of said activity;

3. That Defendants be required to respond to email requests for information from Plaintiff Reid within 72 hours of transmission of an email from Plaintiff Reid;

4. That Defendants be enjoined from marking A.S. as absent where she is physically present in the school and absent from the classroom for any disability-related reason;

5. That Defendants be required to provide Plaintiff A.S. with an appropriate room for medical procedures, and this room must be appropriately heated when ambient temperatures are below 60 degrees Fahrenheit;

6. That Defendants be required to provide Plaintiff A.S. with consistent elevator access to the first, second, and third stories of CHS;

7. That Defendants be required to provide travel-related accommodations to any event for which Plaintiff A.S. is eligible to participate that is not physically located within the CHS campus and to make such arrangements at least 72 hours in advance.

Each and every one of these requests for relief is supported by Plaintiffs' underlying Complaint or by the Affidavit of Janiele Reid attached hereto as Exhibit 1. Plaintiff Reid, in addition to the issues raised in her complaint, avers that since the filing of this lawsuit she has experienced major difficulties in communication with CHS officials and that injunctive relief is necessary to ensure that Plaintiff A.S.'s disability accommodations be maintained.

**(i)** **Transportation and Communication**

On October 25, 2019, Plaintiff Reid emailed Mr. Gregory Howard, the Assistant Principal at CHS, regarding disability accommodations for an off-campus event that Plaintiff A.S. was eligible to attend (*See* Affidavit of Janiele Reid p. 2 pp 6, attached hereto as Exhibit 1).

Howard did not respond until November 8, 2019. (*Id.*) He claimed that he had attempted to contact Plaintiff Reid but that she had blocked his phone number and that of the school student liaison, Barbara Beloach. (*Id.*) Plaintiff Reid has never blocked the number of any CHS employee or administrator, and Mr. Howard has contacted her on numerous other occasions. (*Id.*) Howard advised that there had simply been no need to communicate with Plaintiff Reid regarding the off-campus event because A.S.'s disabilities do not, according to him, require additional accommodations for trips that are not "off campus." (*Id.*) Mr. Howard claimed that this event, which was located at a Methodist Healthcare facility a quarter mile from CHS was not "off campus." (Id. at 1-2.) Mr. Howard claimed that A.S.'s teachers had been provided notice of the event well in advance, however, neither Plaintiff Reid nor A.S. was given notice. Again, without an opportunity to plan, A.S. was effectively excluded from this event. (*Id.*) Despite CHS's efforts to dissemble, this event was clearly "off campus" within any reasonable person's meaning and functionally inaccessible to a wheelchair-bound student. Had Plaintiff Reid been provided notice of this event she could have worked with CHS to arrange accommodations.

On October 28, 2019, Plaintiff Reid communicated with Barbra Beloach, the parent liaison for CHS with responsibility for A.S., about the difficulty in communication regarding this issue. Ms. Beloach asked that Plaintiff Reid blind copy her on all emails to ensure they were being answered. On November 8, 2019, Ms. Beloach informed her that because Plaintiff Reid was involved in this ongoing litigation that she had been instructed not to communicate with her about ongoing matters involving A.S.'s accommodations at the school except through attorneys. (*Id.* at 2.) It is impractical and retaliatory to require communication through counsel for every matter related to A.S.'s education and her special needs, and Plaintiffs have an absolute right under the ADA to engage in protected activity without suffering adverse action, such as a refusal

to communicate. To prevail in a claim for retaliation, a Plaintiff must show that "(1) they engaged in activity protected under Section 504 and the ADA; (2) [the Defendant] knew of this protected activity; (3) [the Defendant] then took adverse action against Plaintiffs; and (4) there was a causal connection between the protected activity and the adverse action." *A.C. v. Shelby Cty. Bd. of Educ.,* 711 F.3d 687, 697 (6th Cir. 2013). Here, both proximity to the filing of the lawsuit and the statements of Ms. Beloach make clear that the difficulty in communication between Plaintiffs and CHS are the result of Plaintiffs' lawsuit. Defendants should be enjoined from continuing to engage in such retaliatory activity. Further, Plaintiffs' allegations and affidavit support the contention that CHS continues to fail in furnishing even simple transportation accommodations. This Court should enjoin Defendants from refusing to provide such accommodations and require that they schedule such accommodations in advance with Plaintiff Reid.

### (ii)     Elevator Access

Defendant SCS has been unable, or unwilling, to ensure that elevators remain functional despite regular and repeated difficulties. (ECF 48-1 p. 3.) Because of CHS's layout, three of A.S.'s classes are only accessible from one elevator. (*Id.*) Four of A.S.'s classes are accessible only from the other elevator. (*Id.*) CHS's elevators have malfunctioned five to six occasions during the fall semester of 2019, resulting in A.S. being unable to attend certain classes. (*Id.*) This is in addition to the constant and repeated malfunctions described in the Complaint, which have persisted for years. CHS has advised Plaintiff Reid that Plaintiff A.S. would receive instruction and assignments at a downstairs location on those occasions, but instead a teacher only makes minimal contact with her and she is left in the library with three to four other mobility-impaired students. (*Id.*) All of this is in addition to the incident in which CHS personnel

left Plaintiff A.S. on the second floor of the building during a fire alarm. (ECF 1 at 10:39). CHS has failed to rectify this obvious ADA violation for years, to the detriment of all mobility-impaired students. Here, Defendant SCS appears to contend that an elevator that routinely breaks down is sufficient compliance with the ADA. It is not. It is insufficient under the ADA to construct a handicapped accommodation but to functionally deny access to it. *Obert v. Pyramid*, No. 03-2135-DV, 2005 U.S. Dist. LEXIS 8211, at *16 (W.D. Tenn. Apr. 7, 2005). SCS should be required to provide a reliable, functioning elevator, or, if unable to do so, to schedule classes for Plaintiff in such a fashion that she is not required to traverse upstairs while simultaneously granting her equal access to classes.

(iii)    **Absences**

Finally, Plaintiffs contend that CHS has retaliated against A.S. by marking her absent when she is present but receiving medical procedures. A.S. is in an environmental science class scheduled from 8:05 to 9:05 a.m. Monday-Friday. (ECF 48-1 p. 3). However, she is required to depart that class at 8:50 to go to the school nurse's office for a catheterization procedure. (*Id.*) She also sometimes must leave earlier on an as-needed basis. (*Id.*) When A.S. leaves the class as required under her ADA accommodations, her teacher marks her absent. (*Id.*) As a result of these false "absences," Plaintiff Reid is contacted by the CHS attendance office via a robocall, and resulting in Plaintiff Reid being forced to go to the school and deal with administrators to have the problem corrected to avoid further consequences. (*Id.*) This pattern of behavior has continued all semester. In addition to being marked absent for classes she attends but must leave early, Plaintiff A.S. is also marked absent for classes she is unable to attend as a result of elevator outages despite receiving alternative assignments in the downstairs library during those hours. (*Id.*)

Marking Plaintiff A.S. absent constitutes a pattern of retaliation. Again, to prevail in a claim for retaliation, a Plaintiff must show that "(1) they engaged in activity protected under Section 504 and the ADA; (2) [the Defendant] knew of this protected activity; (3) [the Defendant] then took adverse action against Plaintiffs; and (4) there was a causal connection between the protected activity and the adverse action." *A.C.*, 711 F.3d at 697. Plaintiff A.S.'s catheterization is clearly a protected activity, and Defendant SCS is aware that she is engaging in a protected activity. Marking A.S. absent is an adverse action, and she is only marked absent due to her departure from class to be catheterized. Defendants should be enjoined from marking A.S. absent from class when she is physically present at school but unable to be physically present in class due exclusively to her disability or accommodations for her disability.

**B.**    **Irreparable Injury**

Plaintiff A.S. will suffer irreparable injury unless this Court issues a preliminary injunction. "The State of Tennessee recognizes the inherent value of education and encourages its support." TENN. CONST. art. XI, §12. The goal of the ADA is "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency" for the disabled. 42 U.S.C. §12101. A plaintiff has "the burden of establishing a clear case of irreparable injury and of convincing the Court that the balance of injury favor[s] the granting of the injunction." *Bd. of Educ. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 860 (S.D. Ohio 2016). Federal courts have held that "[t]he loss of educational and career opportunities . . . is not readily compensable in money damages. . . ." *Ritter v. Oklahoma*, 2016 U.S. Dist. LEXIS 60193, *8 (W.D. Okla. May 6, 2016).

In this case, Plaintiff A.S. has been excluded from educational opportunities stemming from a lack of physical access to CHS, due to locked doors and inoperable elevators. Plaintiff

A.S. is irreparably harmed every time she is excluded from entering CHS, and she is irreparably harmed every time she is unable to attend classes due to an inoperable elevator, or otherwise. Every time Plaintiff A.S. is denied access to the building or a classroom, she is being denied the opportunity for full participation at CHS, and her future economic self-sufficiency is detrimentally affected because of these denied opportunities. Moreover, every time Plaintiff A.S. is denied access to a room with adequate heating, she is being denied a reasonable accommodation to facilitate her necessary medical procedures, and thus her fundamental right to independent living, because she is disabled. These exclusions and denials of basic human services are an ongoing concern.

**C.**     **<u>Plaintiff's Injury Outweighs Harm to Others</u>**

The potential harm inflicted upon Plaintiff A.S. by her exclusion from a public building, and thus her high school education, well outweighs any harm to Defendants. In fact, permitting Plaintiff A.S. to complete her senior year at CHS, and to graduate, causes harm to no one. However, irreparable harm will occur to Plaintiff A.S. if she is excluded from CHS, via a lack of physical access to the public building or a particular floor therein, which will impact her attendance and graduation from same. The same is true if Plaintiff is denied a reasonable accommodation to facilitate her necessary medical procedures. Defendants will not be harmed if Plaintiff A.S. is allowed to undergo her catheterization procedure, or other necessary medical procedures, in a warm room. Conversely, there is an unnecessary risk to Plaintiff A.S. if she is compelled to undergo her medical procedures in an unheated room when outside temperatures approach, or go below, freezing.

**D.    Issuance of a Preliminary Injunction Will Serve the Public Interest**

Congress stated in the enactment of the ADA that it is in the public interest to eliminate discrimination against individuals with disabilities. *See* 42 U.S.C. §12101. The Rehabilitation Act and ADA embody the public interest in "empower[ing] individuals with disabilities to maximize . . . independence, and inclusion and integration into society. 29 U.S.C. §701(b). Congress passed these laws because:

> discrimination against individuals with disabilities persists in . . . education . . .
> [and they] continually encounter various forms of discrimination, including . . .
> the discriminatory effects of architectural [and] transportation . . . barriers,
> overprotective rules and policies, . . . and relegation to lesser services, programs,
> [and] activities.

42 U.S.C. §12101(a)(3)-(5).

By granting Plaintiffs a preliminary injunction, the Court will be furthering these public interests. Plaintiff A.S., despite her disability, will be able to use the elevators and access all facilities without relying on someone else to unlock a door, or grant access to the elevators. She will be reasonably accommodated by having a safe and comfortable space in which to have her necessary medical procedure performed. Her sense of self-worth and emotional development should not be stymied by overprotective rules and policies put in place because of unspecified concerns. Plaintiff A.S. should have access to classroom time, school functions, and student club activities like any other non-disabled student. "That is what the law requires and the [IDEA and ADA] strives for: giving students access to the general curriculum and keeping them from being labeled special education." *Marshall Joint Sch. Dist.*, 616 F.3d 632 (7th Cir. 2010) (citing 20 U.S.C. §1412(a)(5)). Notably, the physical access injunctions that Plaintiff seeks will inure to the benefit of all mobility-impaired students at CHS. This factor weighs entirely in favor of Plaintiff.

**E.**     **Plaintiff Should Not Be Required to Post Bond**

Federal courts construe Rule 65 of the Federal Rules of Civil Procedure to permit a trial court to require no bond where the nonmoving party fails to demonstrate any injury. "[U]nder Fed. R. Civ. P. 65(c) the amount of security given by an applicant for an injunction is a matter for the discretion of the trial court, which may in the exercise of that discretion even require no security at all." *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 100 (6th Cir. 1982) (internal citations omitted). "The purpose of a security deposit in this context is to protect the party injured from damages occasioned by the injunction." Fed. R. Civ. P. 65(c); *USACO Coal Co.*, 689 F.2d at 100. Here, Defendants will suffer no financial injury as a result of the imposition of the injunctions being requested. Plaintiffs are not requesting that Defendants take any extraordinary actions or incur any expenses that it would not otherwise have to bear. Therefore, a bond should not be required.

### III. Conclusion

When balancing the immediate and irreparable harm to Plaintiff A.S. caused by Plaintiff A.S.'s exclusion from CHS against Defendants ability to provide full access to CHS, the Court should find that Plaintiff A.S.'s needs far outweigh any interest of the Defendants. If Plaintiff A.S. is not awarded the relief sought, her future educational and career opportunities will be irreparably harmed.

**WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully request that the Court issue the following Temporary Restraining Orders/Preliminary Injunctions**:

1. That Defendants be required to provide Plaintiff A.S. with access to unlocked exterior doors at CHS.

2. That Defendants be required to notify Plaintiff Reid of any activity that deviates from A.S.'s usual schedule via email at least 72 hours in advance of said activity.

3. That Defendants be required to respond to email requests for information from Plaintiff Reid within 72 hours of transmission of an email from Plaintiff Reid.

4. That Defendants be enjoined from marking Plaintiff A.S. as absent where she is physically present in the school and absent from the classroom for any disability-related reason.

5. That Defendants be required to provide Plaintiff A.S. with an appropriate room for medical procedures, and this room must be appropriately heated when ambient temperatures are below 60 degrees Fahrenheit.

6. That Defendants be required to provide Plaintiff A.S. with consistent elevator access to the first, second, and third floors of CHS.

7. That Defendants be required to provide travel-related accommodations to any event for which Plaintiff A.S. is eligible to participate that is not physically located within the CHS campus and to make such arrangements at least 72 hours in advance.

8. That this Court grant Plaintiffs any further relief to which they may prove entitled.

Respectfully submitted,

BLACK MCLAREN JONES RYLAND & GRIFFEE,
A Professional Corporation

By:     /s/ Brice Timmons
        Brice M. Timmons #29582
        Jana Davis Lamanna #23619
        Christopher M. Williams #36256
        530 Oak Court Drive, Suite 360
        Memphis, TN 38117
        (901) 762-0535 – Telephone
        (901) 762-0527 – Fax
        btimmons@blackmclaw.com
        jlamanna@blackmclaw.com
        cwilliams@blackmclaw.com
        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing document has been served upon all counsel of record in this cause electronically through the Court's ECF filing system, on this the 19th day of December, 2019.

        /s/ Brice Timmons

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

A.S., BY HER NEXT FRIEND
AND MOTHER, JANIELE REID,
and, JANIELE REID, individually,

      Plaintiffs,

                                 Case No: 2:19-cv-02056-JTF

v.                                    JURY DEMANDED

SHELBY COUNTY BOARD OF EDUCATION,
and, GREG MCCULLOUGH,
in his individual and official capacities,

      Defendants.

## AFFIDAVIT OF JANIELE REID

STATE OF TENNESSEE
COUNTY OF SHELBY

      I, Janiele Reid, being first duly sworn, do hereby swear and affirm as follows:

1.     I have personally reviewed the Complaint filed with this Court on January 22, 2019, and the information contained therein is true and accurate, to the best of my knowledge, information and belief.

2.     The acts complained of in the Complaint, or acts substantially similar, have consistently occurred since the filing of the Complaint.

3.     I am the mother of Plaintiff A.S. who is a student at Central High School.

4.     As recently as October 29, 2019, Shelby County has intentionally discriminated against my Daughter by excluding her from or making it unnecessarily difficult for her to attend school events, including but not limited to, a career fair event, and by failing to provide my Daughter with reasonable travel-related disability accommodations and/or reasonable notice of said events so that I could make other accommodations, including ensuring medical accommodations.



5.    The career fair, for example, occurred at a location affiliated with Central's campus but distant from their main facilities. The career fair was held at a Methodist Health Care facility approximately a quarter mile or three large city blocks from Central. While Central does not consider this an "off campus event," it is functionally away from the facilities that A.S. requires, such as the nurse's office. Travel to this event was made more difficult that day because of inclement weather. Without an opportunity to coordinate with the school nurse, pack her medical supplies, or arrange physical transportation, A.S. was effectively compelled to decline to attend. She was, therefore, excluded from this event. Had I received advance notice of the event, I could have made the necessary arrangements for A.S. to attend the career fair.

6.    On October 25, 2019, I emailed I emailed Mr. Gregory Howard, the Assistant Principal, regarding the events referenced in Paragraph 3. He did not respond until November 8, 2019. He claimed that he had attempted to contact me but that I had blocked his phone number and that of the school student liaison, Barbara Beloach. I have never blocked the number of any Central High School employee or administrator, and Mr. Howard has contacted me on other occasions. He advised that there had simply been no need to inform me because A.S.'s disabilities do not, according to him, require additional accommodations for trips that are not "off campus." Mr. Howard claimed that A.S.'s teachers had been provided notice of the event well in advance, however, neither I nor A.S. was given notice. Again, without an opportunity to plan, A.S. was effectively excluded from this event.

7.    On October 28, 2019, I communicated with Barbra Beloach, the parent liaison for Central High School with responsibility for A.S., about the difficulty in communication regarding this issue. Ms. Beloach asked that I blind copy her on all emails to ensure they were being answered. On November 8, 2019, Ms. Beloach informed me that because I was involved in this ongoing litigation that she had been instructed not to communicate with me about ongoing matters involving A.S.'s accommodations at the school except through attorneys. It is impractical and retaliatory to require communication through counsel for every matter related to A.S.'s education and her special needs.

8.    A.S. was one of three mobility-impaired students who was unable to attend the event.

9.      A.S. is in an environmental science class scheduled from 8:05 to 9:05 a.m. Monday-Friday. However, she is required to depart that class at 8:50 to go to the school nurse's office for a catheterization procedure. She also sometimes must leave earlier on an as-needed basis. When A.S. leaves the class as required under her ADA accommodations, her teacher marks her absent. As a result of these false "absences," I am contacted by the Central High School attendance office via a robocall. This has taken place since September of 2019. I have had to go to the school on three occasions since September to address this issue, yet this has continued to happen into November.

10.     This absence issue is consistent with prior difficulties in which A.S. has been unable to attend classes on the second floor as a result of elevator outages during which A.S. has been deemed absent despite receiving alternative assignments in the downstairs library during those hours.

11.     Shelby County has been unable, or unwilling, to ensure that elevators remain functional despite regular and repeated difficulties. Because of Central's layout, three of her classes are only accessible from one elevator. Four of her classes are accessible only from the other elevator. Central's elevators have malfunctioned five to six occasions during the fall semester of 2019, resulting in A.S. being unable to attend certain classes. Central has advised me that A.S. would receive instruction and assignments at a downstairs location on those occasions, but instead a teacher only makes minimal contact with her and she is left in the library with three to four other mobility-impaired students.

12.     A.S. has suffered and continues to suffer harm as a result of her exclusion from Central's facilities, retaliation in the form of being marked absent for routine medical accommodations, Central's refusal to communicate, and Central's failure to ensure adequate notice of and transportation to the events referenced above.

13.     A.S. routinely suffers from a feeling of exclusion, retaliation, and suffers educational harm as a result of the above-described practices.

FURTHER AFFIANT SAITH NOT.

_____
Janjele Reid

Sworn to and subscribed before me this 18 day of November, 2019.

_____
Notary Public

My Commission Expires: 7/14/20